## SUPERIOR COURT OF BALTIMORE CITY.

Filed February 4, 1897.

HADDEN & CO.
VS.
CHARLES H. LINVILLE. GARNISHEE OF THE NATCHAUG SILK CO. OF WILLIMANTIC.

*Bond & Duffy* and *H. B. Twormbley* for plaintiff.

*Wm. Reynolds* and *Paul M. Burnett* for garnishee.

WRIGHT, J.—

The Natchaug Silk Company, a corporation of the State of Connecticut, went into the hands of a receiver on April 26th, 1895. At that time it was indebted to the First National Bank of Willimantic, then in the hands of Michael F. Dooley, receiver, in the sum of about $300,000. On the day of the appointment of the receiver the Natchaug Silk Co., by its president and general manager, transferred a stock of goods in Baltimore to Receiver Dooley as part security for the debt of the Natchaug Co. to the Bank.

Judge Wright in passing upon the case delivered the following oral opinion:

"The first question to be considered is whether or not the First National Bank of Willimantic should be held responsible for the alleged fraudulent statements made by Risley or through his procurements; in other words, were the bank now a going concern could it be successfully attacked in an action for deceit, founded on the false representations of Risley. The bank and the Natchaug Silk Company were both corporations of the State of Connecticut. Risley was the cashier of the bank and also an official of the silk company, largely engaged in managing the financial matters of the company. Very heavy loans were made by the bank to the Silk Company, loans greatly in excess of the amount that the bank. as a national bank, was legally authorized to make. While these loans were outstanding, Risley, acting as an official of the Silk Company, prepared, or caused to be prepared certainly grossly fraudulent statements of the financial condition of the Silk Company, had the same delivered to the plaintiffs, who by these statements were induced to give credit for the goods sold by them to the company, and these proceedings are an attempt on the part of the plaintiffs to recover the price, or a part of the price, agreed to be paid for the goods sold.

There is nothing in the evidence, that would directly show that Risley in any way, was acting on behalf of the bank in making these false statements. but it is contended, that from the relations of Risley to the bank and to the company, and from the contract of the parties the law will presume that the bank had knowledge of these false statements, and that consequently the plaintiffs should be entitled to succeed as against the bank's representative or receiver.

Since the adjournment of the Court yesterday, I have as carefully as the limited time would permit. examined the cases submitted in their brief by the plaintiffs, and have also carefully examined the chapter on the powers and duties of a cashier of a bank, in Thompson on corporations, and after such examination, I have been forced to the conclusion, that the bank cannot be held responsible for the statements of an officer of the Natchaug Silk Com-

pany, who also happened to be the cashier of the bank.

It seems to me that all through the cases a doctrine can be perceived which should prevent any other decision on this point, and that is as follows: that to hold a bank liable for the fraudulent representations of its cashier, such cashier must, in making them, have acted within the scope of his duties— along the line of his duty, and being along the line of his duty, it would be deemed negligence on the part of the governing board, were they ignorant of them. The bank is always put upon inquiry as to whether or not the cashier is faithfully performing his duties, but it is not put upon inquiry as to whether or not he is acting fraudulently in relation to the affairs of another independent corporation. The bank was bound to know of the illegally excessive loans to the Silk Company, but these excessive loans did not constitute a fraud on the plaintiffs. It would be a hard doctrine that would hold that one creditor who had given imprudent and excessive credit to his debtor, had in this respect acted fraudulently as to those creditors who had been more prudent. The only fraud affecting the plaintiffs shown by the evidence, is to be found in the false statements referred to. These statements were made primarily in the interest of the Silk Company, and the mere fact that the bank might be partly repaid out of the sale of goods manufactured from the raw material bought by the plaintiffs, would hardly justify me in saying, that in making these statements, Risley was acting along the line of or within the scope of his duties as cashier.

Even were it clearly apparent, or were there evidence legally sufficient to show that the personal object of Risley was, by these false statements, to obtain credit for the Silk Company, so that the Silk Company might repay some of the loans made by the bank, this of itself could not effect the bank. There would be no limit to the liability of a bank or other corporation should the doctrine contended for by the plaintiffs prevail. Officers without antecedent authority, and not acting within the ordinary scope of their duties could impose liability for their torts which would lead to ruin. For instance, if instead of trying to get credit, for the Silk Company by false statements, Risley had endeavored to induce the plaintiffs to give this credit by an assault and battery on them, this doctrine would go to the length of holding the bank liable for such assault and battery.

The next question is, had Chaffee, acting as the general manager of the Natchaug Silk Company, the power to validly assign the goods attached to one of the creditors of the company.

That he was the general manager, there can be no doubt from the evidence, and being general manager, what were his powers under the law of Connecticut, for by that law I think we must be governed. In examining this question I was, of course, much influenced by the opinion of Judge Shipman, found in the case in the Federal Reporter, brought to my attention. I cannot tell from the statement of the facts in that case, how much or how little of the evidence now before me was introduced, but there can be no doubt that the point was made that the general manager—and it was the same general manager of this same corporation in, that case that it is in this, J. D. Chaffee —had no power to make an assignment of goods practically similar to the one now before me. Judge Shipman, from an examination of the Connecticut authorities, came to the conclusion that the general manager had the authority denied in that case, as it is denied in this. As against this we have a Massachusetts case, and, like most decisions in that State, it seems to be a strong one. I have not had the opportunity to examine it with much care, nor do I think it necessary, believing, as I do, that the Connecticut law must prevail. That there are, however, well considered decisions along the same line as the Connecticut case, I would refer to McKiernan vs. Luscen (56 Cal. 61, and see Connecticut case, cited garnishee). Believing, then, that Chaffee, as general manager, had the power to assign the goods in controversy, I think there is sufficient evidence of the assignment.

The general manager seeks the company's agent in Baltimore, tells him that he has assigned the goods and requests the agent to hold them for the assignee, which the agent agrees to do and does.

There is little to be said in regard to the point raised that as the Silk Com-

pany's affairs were placed in the hands of a receiver by the Court in Connecticut on the same day that these goods were assigned, therefore the general manager had no power to make the assignment at the time he did.

The receiver had no extra-territorial authority, and even if through comity he might be permitted to come into this State to take possession of goods, he is not seeking to do so in this case; this is simply a struggle between two creditors, and the receiver of the Natchaug Silk Company takes no part. The assignor and assignee of the goods attached being both residents of the State of Connecticut, the Court in that State which has jurisdiction over the affairs of the Silk Company can punish any disobedience to its orders and prevent what it might deem a wrong; but I think that is a question with which I have nothing to do.

The prayer taking the case from the jury will be granted.